PEARL E. MOBERG, Appellant, v. FIRST NATIONAL
BANK OF NEVADA, Executor of the Estate of
AUGUST B. MOBERG, Deceased; RAYMOND L.
MOBERG; MRS. ANNIE RICHARDSON; DELLA
MOBERG BRIELAND; LEONA MOBERG PAULSON;
MRS. ELRAY D. REUTZ; ELEANORE MOBERG;
EDWIN R. MOBERG; DONALD BELANGER; NOR-
MAN MOBERG and CHESTER MOBERG, Respond-
ents.

No. 11093

February 28, 1980 607 P.2d 112

*Murphy & Nelson-Kortland, Chartered,* Reno, for Appel-
lant.

*A. D. Jensen,* Reno, for Respondent First National Bank of
Nevada.

*Harold O. Taber,* Reno, for Respondent heirs.

## OPINION

*Per Curiam:*

Pearl E. Moberg appeals from the judgment of the district court, rendered on a stipulated set of facts, declaring that she possesses no community property interest in certain properties. It was stipulated that at the time of marriage, decedent possessed property valued at $79,956. This amount was clearly decedent's separate property. Certain properties extant at the time of death were traced to this separate property[1] and are, therefore, separate property.[2] The main subject of this appeal is the balance of the property remaining at the time of decedent's death which was not traceable to the property possessed by him at the time of marriage. There was no evidence properly before the trial court as to any efforts expended or expenses incurred by the community. Thus, there is no specific information available as to the source, or status, of the funds used to acquire these non-traceable assets.

The district court concluded that $233,693, which represented the total value of both the traceable and non-traceable assets, represented a reasonable return on the original $79,956 and, therefore, the total amount should be considered the decedent's separate property. In doing so, it appears the district

---

[1] The following items appear to have been traced to the separate property of the decedent (numbers supplied are the preliminary inventory item numbers):

16. 1,384 shares of American Business Shares Inc., common stock.
18. 198 shares of American Telephone and Telegraph Company, common stock (an additional 198 shares of the stock could not be traced).
19. 23 shares of Sierra Pacific Power Company, preferred stock.
75. Series E bond.
83. House and lot.

[2] Appellant also contends that the increase in value of a house, admittedly purchased with separate property funds, should be apportioned because there was some evidence that the house had been well maintained; however, there was no evidence as to the amounts expended, the status of those funds, or the effect such maintenance had on the house's value. Under these circumstances, the district court's determination that the house was decedent's separate property was not erroneous. As to the balance of the traceable properties, no assertion as to any community efforts expended has been made; therefore, the question of allocation of a portion of the value of these assets to the community does not arise, *see* Cord v. Neuhoff, 94 Nev. 21, 573 P.2d 1170 (1978); Johnson v. Johnson, 89 Nev. 244, 510 P.2d 625 (1973).

court was attempting to apply the method of apportionment adopted in Pereira v. Pereira, 103 P. 488 (Cal. 1909) and approved by this court in Johnson v. Johnson, 89 Nev. 244, 510 P.2d 625 (1973). The *Pereira* method of apportionment provides in essence that, where the value of originally separate property has been increased due to community efforts, the original value of the separate property plus a reasonable rate of return shall be allocated to the separate property of the spouse and any excess shall be allocated to the community. Johnson v. Johnson, *supra.*

However, before there can be any apportionment under *Pereira,* it first must be established that an identifiable separate-property asset has been enhanced in value due to community efforts. *See* Johnson v. Johnson, *supra.* Here, we are not presented with such a situation. Instead, we are called upon to determine the status of property acquired during marriage with funds the status of which is uncertain. The correct rule of law to be applied is that such assets are presumed to be community property unless the presumption is rebutted by clear and certain proof to the contrary. Todkill v. Todkill, 88 Nev. 231, 495 P.2d 629 (1972); Kelly v. Kelly, 86 Nev. 301, 468 P.2d 359 (1970); Carlson v. McCall, 70 Nev. 437, 271 P.2d 1002 (1954).

While, apart from tracing, it may be possible to establish the separate character of an asset as, for example, where it is shown that no community assets existed on the date of acquisition, *see* Estate of Murphy, 544 P.2d 956 (Cal. 1976), the record in this case allows no basis to establish by clear and certain proof that the contested property was anything but community in nature.

Accordingly, we hold those properties that cannot be traced to be community property, and reverse and remand this case for proceedings consistent with the views expressed herein.[3]

---

[3]Remand is necessary because, in determining that all the assets were separate property, the district court did not address certain issues that now must be decided. For instance, it appears that certain gifts made by the decedent may be valid even though made from community funds. *See* Christensen v. Christensen, 91 Nev. 4, 530 P.2d 754 (1975); Nixon v. Brown, 46 Nev. 439, 214 P. 524 (1923). We express no opinion on this or other questions that may arise, but leave them for the district court to determine.

We also note that certain U.S. bonds (Nos. 40–74, 76–82), although not traceable, are distributable under compulsion of federal law as though they were separate property. *See* Yiatchos v. Yiatchos, 376 U.S. 306 (1964). However, since these bonds, under our decision, are presumed to have been community assets, appellant is entitled to an offset to be paid out of the remaining community assets. In this way, appellant will receive her full half share of the total community assets. *See* Yiatchos v. Yiatchos, *supra.*