GERALD DeVRIES, APPELLANT, *v.*
MARDELL GALLIO, RESPONDENT.

No. 57199

December 13, 2012                    290 P.3d 260

*Law Offices of Roderic A. Carucci* and *Roderic A. Carucci*, Reno, for Appellant.

*Bullock Law Offices, Ltd.*, and *Jack T. Bullock II*, Winnemucca, for Respondent.

Before SAITTA, PICKERING and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

This appeal concerns the district court's resolution of property division and spousal support issues in a divorce decree. During the divorce proceedings between appellant Gerald DeVries and respondent Mardell Gallio, Gerald sought an interest in Mardell's separate property and requested spousal support. After three evidentiary hearings, which focused on the property division issue, the district court entered a divorce decree in which it found that Gerald was not entitled to any interest in Mardell's separate property. Without conducting an evidentiary hearing on the spousal support request or expressly analyzing the factors for determining spousal support set forth in *Sprenger v. Sprenger*, 110 Nev. 855, 878 P.2d 284 (1994), and NRS 125.150(8), the court declined to award spousal support to either party. Gerald appealed. While we conclude that the district court's separate property decisions are supported by substantial evidence and thus affirm that portion of the decree, we reverse and remand as to the district court's rejection of the spousal support request, because it appears that the court failed to properly consider that issue.

### FACTS AND PROCEDURAL HISTORY

The parties were married in 1997 and filed for divorce in 2009. The main issue in the divorce proceedings was the characterization of the couple's property. Both Gerald and Mardell were in the cattle business. After the marriage, Mardell formed two companies,

Gallio Ranches, Inc., and Gallio Cattle, LLC, which held, respectively, her separately owned property, and a 1,500-acre cattle ranch in which she had a 30-percent interest. Gerald argued that he had an interest in Gallio Cattle because he had worked for the company from the time of its formation to the time of the divorce but had never received a wage. He claimed that, due to a premarital civil judgment against him, the parties had agreed that all of his income and earnings would be submitted to Gallio Ranches in order to prevent those assets from being subjected to the premarital judgment.

The district court held three evidentiary hearings focusing on the character of the couple's property. During the hearings, the parties generally discussed the various places that they had worked and their labor contributions to the marriage. They also provided an exhaustive tracing of property and cattle purchased and sold during the marriage. At the conclusion of these hearings, the district court characterized the property as community or separate, held that both Gallio Ranches and Gallio Cattle were Mardell's separate property, and declined to award Gerald an interest in either entity.

Although Gerald sought spousal support from Mardell in his complaint for divorce, the district court did not hear evidence on the support issue. At the conclusion of the evidentiary hearings, Gerald noted that the issue of spousal support had not yet been addressed. Instead of scheduling a fourth evidentiary hearing, however, the district court asked both parties to submit a proposed final divorce decree addressing the spousal support issue. After receiving the proposed divorce decrees, the district court declined to award either party spousal support because it found that there were insufficient facts to support awarding either party spousal support under the "statutory factors." However, the court did not discuss the factors or cite to the law it relied upon in making its finding.[1] Gerald now appeals.

## DISCUSSION

### Separate property

This court reviews a district court's decisions made in a divorce decree for an abuse of discretion. *Williams v. Williams*, 120 Nev. 559, 566, 97 P.3d 1124, 1129 (2004). Those decisions supported by substantial evidence will be affirmed. *Id.* "Substantial evidence is that which a sensible person may accept as adequate to sustain a judgment." *Id.*

---

[1]The parties' proposed divorce decrees were not included in the record on appeal, which hinders our review of the information considered by the district court.

On appeal, Gerald contends that the district court abused its discretion by failing to award him an interest in Gallio Cattle even though both parties contributed their labor and skill, without compensation, to increase the value of the business.[2] In Nevada, "when a spouse devotes his time, labor, and skill to the production of income from separate property," the court may apportion any increase in value of the separate property business between the separate property and community property estates. *Cord v. Neuhoff*, 94 Nev. 21, 26, 573 P.2d 1170, 1173 (1978). This court has approved the two main methods of apportionment expressed in the California cases of *Pereira v. Pereira*, 103 P. 488 (Cal. 1909), and *Van Camp v. Van Camp*, 199 P. 885 (Cal. Ct. App. 1921). *Id.* The preferred method of apportionment is the *Pereira* method unless it is shown "that a different method of allocation is more likely to accomplish justice." *Id.*

Under the *Pereira* method, the district court may allocate a fair rate of return on the initial investment in the business to the separate property estate, with the remaining value of the business being allocated to the community property estate. *Id.* The increase in the business's value must result from community efforts. *Moberg v. First National Bank*, 96 Nev. 235, 237, 607 P.2d 112, 114 (1980). The record reveals that the increase in value of Gallio Cattle was due primarily to the value of the real property owned by the company. *See Cord*, 94 Nev. at 26, 573 P.2d at 1173 (stating that there must be an apportionment between the separate and community estates "unless the increment is due solely to a natural enhancement of the property"). The company purchased a 1,500-acre ranch in 2002 for $380,000 and sold the ranch in 2010 for $1.2 million. Mardell owned a 30-percent share of the company. After extensive tracing, the district court concluded that all of Mardell's contributions to Gallio Cattle derived from her separate property. Furthermore, there is no evidence in the record that affirmatively demonstrates that the labor of either Mardell or Gerald contributed to the increase in value of Gallio Cattle.

Although the district court did not explain in its order which method it applied to reject an allocation of a community property interest in Gallio Cattle, its failure to include this information does not invalidate the order "so long as the reasons for the [order] are readily apparent elsewhere in the record and are suffi-

---

[2]Gerald does not challenge the district court's characterization of Gallio Ranches and Gallio Cattle as Mardell's separate property.

ciently clear to permit meaningful appellate review." *Las Vegas Novelty v. Fernandez*, 106 Nev. 113, 118, 787 P.2d 772, 775 (1990). The record contains substantial evidence that supports the conclusion that the district court did not abuse its discretion in declining to apply the *Pereira* method to allocate an interest in Gallio Cattle to the community estate.

Further, the district court did not abuse its discretion in refusing to allocate a portion of the separate property under the *Van Camp* method, even though Gerald testified that he worked for Gallio Cattle for approximately eight years without receiving a wage. Under the *Van Camp* method, the community estate is allocated an amount equal to the average salary of a person performing the same duties as the spouse, with the remaining value of the business being allocated to the separate property estate. *Cord*, 94 Nev. at 26, 573 P.3d at 1173. Here, Mardell testified that both she and Gerald were compensated for their labor in the form of room and board, food, fuel, supplies, and materials in lieu of actual wages. Thus, we conclude that the district court did not abuse its discretion in declining to apply the *Van Camp* method to award Gerald an interest in Gallio Cattle because there is substantial evidence in the record to support a finding that Gerald was amply compensated for his labor. Therefore, we affirm the property determinations of the divorce decree.[3]

*Spousal support*

Gerald argues that the district court abused its discretion by failing to award him spousal support.[4] The district court has wide discretion in determining whether to grant spousal support, and this

---

[3] We also reject Gerald's argument that the district court abused its discretion by failing to award Gerald an interest in Gallio Ranches. Although Gerald presented evidence that Gallio Ranches increased in value during the marriage, there was minimal evidence of what labor, if any, Gerald contributed to Gallio Ranches. The increase in value of Gallio Ranches appears to have come solely from the sale and acquisition of cattle and equipment, and the extensive tracing performed by the district court showed that these cattle and equipment were purchased with Mardell's separate property or the rents therefrom. Thus, we affirm this portion of the divorce decree.

[4] Mardell contends that Gerald is unable to argue this issue on appeal because he presented insufficient evidence below to the district court. However, despite Gerald's request for spousal support in the complaint for divorce, the district court did not hold an evidentiary hearing on the issue of spousal support. Instead, the district court requested that the parties submit proposed final divorce decrees addressing this issue. Thus, because Gerald never had an opportunity to present evidence below, we conclude that Mardell's argument is without merit.

court will not disturb the district court's award of alimony absent an abuse of discretion. *Wolff v. Wolff*, 112 Nev. 1355, 1359, 929 P.2d 916, 918-19 (1996). The court "[m]ay award such alimony to the wife or to the husband, in a specified principal sum or as specified periodic payments, as appears just and equitable." NRS 125.150(1)(a).

Two of the principal reasons for awarding alimony, at least in lengthy marriages, "are to narrow any large gaps between the post-divorce earning capacities of the parties, and to allow the recipient spouse to live 'as nearly as fairly possible to the station in life [ ] enjoyed before the divorce.'" *Shydler v. Shydler*, 114 Nev. 192, 198, 954 P.2d 37, 40 (1998) (alteration in original) (citations omitted) (quoting *Sprenger v. Sprenger*, 110 Nev. 855, 860, 878 P.2d 284, 287 (1994)). When considering whether to award spousal support, the district court should consider, among other things, the parties' careers before marriage, the parties' educations during marriage, the parties' marketability, the length of the marriage, and what the parties were awarded in the divorce proceedings besides spousal support. *Sprenger*, 110 Nev. at 859, 878 P.2d at 287, *cited with approval in Schwartz v. Schwartz*, 126 Nev. 87, 91, 225 P.3d 1273, 1275 (2010); *see also* NRS 125.150(8). Importantly, "[w]here the trial court does not indicate in its judgment or decree that it gave adequate consideration to the [appropriate] factors in failing to award any alimony . . . , this [c]ourt shall remand for reconsideration of the issue." *Forrest v. Forrest*, 99 Nev. 602, 606, 668 P.2d 275, 278 (1983).

Here, the district court summarily rejected an award of spousal support when it found that there were insufficient facts to support awarding either party spousal support under the "statutory factors." The record reveals that all three evidentiary hearings focused on the division of property between the parties, and the district court did not hear evidence on the support issue. Further, although the district court's order mentioned its consideration of "the statutory factors" in rejecting an award of spousal support, presumably referring to the factors listed in NRS 125.150(8), which are similar to the *Sprenger* factors and to the factors articulated in the case cited by Gerald, *see Buchanan v. Buchanan*, 90 Nev. 209, 215, 523 P.2d 1, 5 (1974), it is unclear from the record if or how the district court applied those factors to the limited evidence that was before it. It is therefore difficult to determine on what basis the district court arrived at its conclusion that neither party was entitled to spousal support.

Based on our review of the record and the divorce decree, we conclude that the district court abused its discretion by failing to

properly consider whether Gerald was entitled to spousal support. Gerald was not afforded an opportunity to present any evidence relating to spousal support because the evidentiary hearings focused solely on the division of property between the parties, and the district court's order failed to explain its reasons for awarding no spousal support. Thus, we reverse that portion of the divorce decree relating to spousal support, and we remand this matter to the district court for it to properly consider the statutory and *Sprenger* factors with regard to spousal support.

Accordingly, we affirm in part and reverse in part the district court's divorce decree and remand this matter for further proceedings consistent with this opinion.

SAITTA and PICKERING, JJ., concur.