GLEN H. SQUYRES and FAYE SQUYRES, Appellants, v.
ZIONS FIRST NATIONAL BANK, Respondent.

No. 10548

May 16, 1979                                    594 P.2d 1150

*Peter L. Flangas,* Las Vegas, for Appellants.

*Robert E. Jones,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

In 1971 appellant Glen H. Squyres commenced doing business as a sole proprietor under the name Duchesne Equipment Company in Duchesne, Utah, a town of approximately 2,000 people. The business originally consisted of steam cleaning, mostly in connection with oil drilling and exploration enterprises near Duchesne. Gradually, the business expanded to the

sale, rental and servicing of various equipment incidental to the oil industry and eventually included sales and servicing of fire extinguishers.

As the business expanded, Squyres applied to respondent bank for financing. Beginning in early 1974, the bank extended Squyres a series of loans secured by accounts receivable which the debtor pledged. In this manner, the bank followed the practice of loaning appellant 80% of the face amount of his pledged receivables. By September, 1974, Squyres' indebtedness to the bank reached a high of nearly $160,000. When it became apparent that some of the accounts were not being realized, the bank decided to curtail appellant's borrowing. Accordingly, Mr. Ferron Peterson, respondent's Duchesne branch manager, advised the debtor that the bank wished to reduce his indebtedness to around $50,000. The bank also requested an audited financial statement for calendar year 1974. On February 18, 1975, Squyres supplied Mr. Peterson with an unaudited, uncertified financial statement.

Sometime around March 1, 1975, there were rumors in Duchesne that the Squyres were planning to move away. Mr. Peterson visited Mr. Squyres outside appellants' home on Saturday, March 8, 1975, at which time appellant advised him that he intended to cut his inventory in an effort to comply with the bank's request to curtail his borrowing. He also said that he was planning a business trip to Las Vegas and would be away for a week or two.

About a week later, appellants packed up all their furniture and belongings, withdrew their children from school and left Duchesne. Squyres allegedly left enough money at his office to meet two weeks' payroll for his employees, but there is no showing that he notified his creditors of his intentions.

Soon thereafter, his creditors became aware of the situation and began looking for security. One creditor, Mr. Guy Taylor, learned appellants had gone to Las Vegas and went there himself to meet them. At that meeting, Mr. Squyres signed a document purporting to sell the equipment company to Mr. Taylor for $10. Mr. Taylor recorded the bill of sale in Utah, but the equipment company never again commenced doing business.

On March 13, 1975, Mr. Peterson and another bank official flew to Las Vegas to discuss appellant's future with Duchesne Equipment Company. Squyres explained his move to Las Vegas as an attempt to escape the mounting business pressures in Duchesne. The bank took an assignment of a contract Squyres had not completed, and applied the proceeds of a subsequent sale to his account.

On March 17, 1975 respondent filed suit in the district court in Las Vegas for judgment on the debt.[1] By its amended complaint of August 21, 1975, the bank sought judgment for $93,027.14, together with interest, attorney's fees and costs, and the foreclosure of its security interest in the accounts.[2] Following a three day trial the court, sitting without a jury, entered judgment for the bank as prayed in the complaint.

In this appeal, appellants contend the bank acted in a commercially unreasonable manner and that the judgment of the trial court is not supported by the evidence. We disagree and affirm the judgment in all respects.

The security agreement defined default, *inter alia,* as any sale of all or substantially all of the debtor's assets other than in the due course of business, cessation of business by the debtor, or reasonable insecurity on the part of the bank. The evidence of appellant's default is overwhelming. Indeed, during oral argument, appellants admitted being in default.

On default, a secured creditor has all the rights outlined in Part Five of Article Nine of the Uniform Commercial Code. NRS 104.9501 *et seq.* He "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." NRS 104.9501(1). Here, as it was entitled to do, the bank proceeded to collect on the account receivables pledged. The money thusly collected was credited to the debtor's account. The trial court found, and we agree, that in its handling of the collateral, the bank acted in a commercially reasonable manner.

Although Squyres contends the bank failed to credit certain amounts against his indebtedness, the trial court found otherwise, and there is substantial evidence to support that finding. Jones v. Bank of Nevada, 91 Nev. 368, 535 P.2d 1279 (1975). We find no error.

The judgment is affirmed.

---

[1] This procedure is expressly authorized by NRS 104.9501(1).

[2] The bank also sought to foreclose its purchase money security interest in a 1975 Pontiac automobile appellants had purchased under a conditional sales contract. The trial court granted respondent the relief requested; however, that portion of the judgment is not the subject of this appeal.