138 Nev., Advance Opinion **57**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; AND GRANDBRIDGE REAL ESTATE CAPITAL, LLC, Appellants, vs. WESTLAND LIBERTY VILLAGE, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND WESTLAND VILLAGE SQUARE, LLC, A NEVADA LIMITED LIABILITY COMPANY, Respondents. | No. 82174 |



FILED

AUG 11 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting a preliminary injunction and denying appointment of a receiver in a dispute concerning real property loan agreements. Eighth Judicial District Court, Clark County; Kerry Louise Earley, Judge.

*Reversed and remanded.*

Snell & Wilmer LLP and Kelly H. Dove, Nathan G. Kanute, and Bob L. Olson, Las Vegas,
for Appellant Federal National Mortgage Association.

Holland & Hart LLP and Joseph G. Went, Lars K. Evensen, and Sydney R. Gambee, Las Vegas,
for Appellant Grandbridge Real Estate Capital, LLC.

Campbell & Williams and J. Colby Williams and Philip R. Erwin, Las Vegas; Law Offices of John Benedict and John Benedict, Las Vegas; and Westland Real Estate Group and John W. Hofsaess, Long Beach, California, for Respondents.

22-25128

Fennemore Craig, P.C., and Leslie Bryan Hart and John D. Tennert, Reno, for Amicus Curiae Federal Housing Finance Agency.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

This appeal permits us to clarify when a lender or its assignee is entitled to the appointment of a receiver after a borrower defaults on a real property loan agreement. The borrower here owns properties housing multi-family apartment complexes, and the lender observed a significant decrease in occupancy after the borrower assumed ownership. The lender's inspector observed that significant repairs were needed, and the lender demanded deposits into repair and replacement escrow accounts, relying on specific provisions in the loan agreements. The borrower did not make the demanded deposits, which the lender deemed a default under the loan agreements. The lender sued and sought a receiver. The borrower countersued, alleging breach of contract and seeking a preliminary injunction. The district court found that there was no default and issued a wide-ranging preliminary injunction, reaching matters that had been neither briefed nor argued.

We have not previously had cause to interpret NRS 32.260(2)(b) and NRS 107A.260(1)(a)(1), which provide that a lender is entitled to the appointment of a receiver when the borrower agrees to such in the event of a default and, after a default, the lender seeks a receiver in enforcing the loan, NRS 32.260(2), or the property is subject to the assignment of rents,

NRS 107A.260(1). As the lender has an entitlement to a receiver in such instances, appointment of a receiver is not subject to the district court's discretion. The agreement itself may state what circumstances constitute a default.

The district court here erred in disregarding the loan agreements' provisions setting forth what constituted a default. The loan agreements contain clear terms setting forth the parties' obligations and what constitutes default. The borrower here failed to perform several duties mandated under the loan agreements, including the duty to make the demanded deposits, and this failure constituted default. As the borrower agreed to the provisions in the loan documents stating that the lender may obtain a receiver in the event of default, the lender was entitled to the appointment of a receiver on the borrower's default, and the district court abused its discretion in refusing to appoint one. The district court further abused its discretion in issuing a preliminary injunction because it rested its order on clearly erroneous factual determinations, did not apply the relevant standards for injunctive relief, and failed to recognize the lender's entitlement to a receiver. We accordingly reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

This appeal involves a dispute concerning mortgage loans entered into to finance the purchase of two properties housing multi-family apartment complexes. Appellant Federal National Mortgage Association (Fannie Mae) is the successor-in-interest to the original lender for the loan agreements; appellant Grandbridge Real Estate Capital, LLC, is its loan servicer. Respondents Westland Liberty Village, LLC, and Westland

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

Village Square, LLC (collectively, Westland) are the successors-in-interest to the original borrowers. The predecessor borrowers executed a loan agreement for approximately $9.4 million to finance the purchase of a property known as "Village Square Apartments." The predecessor borrowers executed another mortgage loan agreement for $29 million to purchase "Liberty Village Apartments." The predecessor lender held a note and deed of trust on each property (loan documents). The agreements have materially equivalent operative provisions. The predecessor lender assigned both Village Square and Liberty Village loan documents to Fannie Mae. Westland executed assumption and release agreements to take on the Village Square and Liberty Village loan obligations, including payment and performance obligations, from the original borrowers and guarantors. In doing so, Westland expressly adopted all of the terms and obligations of the loan documents and associated instruments.

Compliance with the provisions of these agreements is at the essence of this dispute. The loan agreements provide that the borrower shall pay the expenses to maintain and repair the property (§ 6.02(b)). The borrower must permit the lender or its agent to inspect the property, subject to routine constraints, such as business hours (§ 6.02(d)). If, in connection with an inspection, the lender determines that the property has deteriorated beyond that of ordinary wear and tear, the lender may obtain a property condition assessment (PCA) at the borrower's expense (§ 6.03(c)). The lender may require additional lender repairs or replacements on the basis of the PCA (§ 6.03(c)).

*Additional repairs and deposits*

With timely written notice, the lender may require the borrower to make an additional deposit to the replacement reserve account or the

SUPREME COURT
OF
NEVADA

(O) 1947A

4

repairs escrow account "if Lender determines that the amounts on deposit in either [account] are . . . not sufficient to cover the costs for . . . Additional Lender Repairs . . . or Additional Lender Replacements," pursuant to section 13.02(a)(9) (§ 13.02(a)(4)). Section 13.02(a)(9) provides that the lender may require the borrower to make additional lender repairs or replacements and provides general terms for the lender to disburse from the reserve or escrow accounts to pay for those repairs when all other conditions are met (§ 13.02(a)(9)(B)). It further provides that "[n]othing in this Loan Agreement shall limit Lender's right to require an additional deposit to the [reserve or escrow accounts]" or to require additional monthly deposits for additional lender repairs or replacements. The borrower may contest any demanded deposit's amount or validity by the appropriate legal process, though the lender may require the borrower to deposit the contested sum (§ 12.02(e)). Whether additional deposits or repairs are warranted generally falls within the lender's discretion throughout the agreement.

*Defaults*

The loan agreements set forth numerous automatic default events, including any failure by the borrower to deposit any amount required by the agreement (§ 14.01(a)(1)). In the event of a default, the lender has the option to accelerate the loan and demand payment of all the remaining unpaid balance and any other money due; it may also foreclose (§ 14.02(a)). The lender need not disburse payments for repairs or replacements from the reserve or escrow accounts if there is a default (§§ 13.02(a), 14.02(b)).

Pursuant to the deed of trust, the borrower agrees to assign all rents to the lender. In the event of a default, the lender may request the court to appoint a receiver. If the lender chooses to seek a receiver, the

borrower expressly consents to the appointment of a receiver. The original borrowers signed each deed of trust in executing it, and Westland expressly assumed all of the terms of the collected loan documents.

After Westland began operating the apartment complexes, Fannie Mae observed a substantial decrease in occupancy rates and became concerned that this decline resulted from deterioration in the condition of the properties. Fannie Mae inspected the properties' condition and then retained a third-party inspector to produce a PCA, documenting the repairs needed, for each property. The inspector examined the properties and concluded that Village Square was in substandard condition, Liberty Village was in fair to poor condition, and they required approximately $1.09 million and $1.75 million, respectively, in repairs and replacements.

Fannie Mae's agent sent Westland notices of demand for each property, requiring Westland to deposit an aggregate sum of approximately $2.8 million in the repairs escrow accounts. The notices also increased monthly deposits to the repairs escrow accounts by $9,557. Westland responded that there was no basis to demand the deposit, there was no failure to maintain because the properties were dilapidated when they were acquired, the repairs requested improperly constituted ordinary wear and tear repairs, and Fannie Mae had no right to conduct a PCA. Fannie Mae filed and served notices of default based on Westland's purported failures to maintain the properties and to make the required account deposits.

Fannie Mae petitioned the district court for the appointment of a receiver. In response, Westland moved for a preliminary injunction to enjoin any foreclosure proceedings, opposed the appointment of a receiver, and asserted counterclaims, alleging Fannie Mae breached the loan

Supreme Court
of
Nevada

(O) 1947A

6

agreement. Westland named Grandbridge as a third-party defendant, asserting claims against it as Fannie Mae's agent.

The district court held a hearing and expressed doubt that Westland defaulted because Fannie Mae did not show that Westland ceased paying entirely. It found a factual dispute as to the alleged default and found that Westland would suffer irreparable harm in losing the properties by foreclosure. It thus concluded that a preliminary injunction was warranted and that a receiver was not. The court enjoined Fannie Mae from acting to foreclose, interfering with Westland's operation of the properties, appointing a receiver, possessing the property, enforcing a judgment or security interest against the properties without court approval, or taking any adverse action against any Westland-affiliated corporate entity with respect to any other loans. The court further required that Fannie Mae turn over the monthly debt service invoices, disburse any funds paid in excess of the monthly debt service obligations, disburse any excess funds Fannie Mae held in a repairs account, pay Westland the interest that would have been earned had certain monies been held in an interest-bearing account rather than one that did not, and timely respond to disbursement requests. And the court struck the notices of demand, notices of default, acceleration of the notes, and the demands and notices per NRS 107A.270.[2]

_____

[2]This court stayed operation of provisions in the district court's order directing Fannie Mae to remove the notices of default and election to sell from the properties' titles, such that those notices remain of record, though we did not stay operation of the remaining provisions. *Fed. Nat'l Mortg. Ass'n v. Westland Liberty Vill., LLC*, Docket No. 82174, at *2 (Order Granting Stay in Part and Denying Stay in Part, Feb. 11, 2021) (staying paragraphs 2 and 3).

Fannie Mae appealed. In addition to Fannie Mae's challenge, Grandbridge appealed, asserting that it should not be subject to the injunction because it did not timely become a party to the litigation. Federal Housing Finance Agency (FHFA), which serves as conservator for Fannie Mae, filed an amicus brief.

## DISCUSSION

We review for an abuse of discretion a district court's decisions whether to appoint a receiver, *Med. Device All., Inc. v. Ahr*, 116 Nev. 851, 862, 8 P.3d 135, 142 (2000), *abrogated on other grounds by Costello v. Casler*, 127 Nev. 436, 440 n.4, 254 P.3d 631, 634 n.4 (2011), or to grant a preliminary injunction, *Shores v. Glob. Experience Specialists, Inc.*, 134 Nev. 503, 505, 422 P.3d 1238, 1241 (2018). "An abuse of discretion can occur when the district court bases its decision on a clearly erroneous factual determination or disregards controlling law." *Las Vegas Metro. Police Dep't v. Blackjack Bonding, Inc.*, 131 Nev. 80, 89, 343 P.3d 608, 614 (2015).

*The district court erred in finding Westland did not default*

Fannie Mae argues that the district court clearly erred when it found a dispute as to Westland's default. It argues that Westland defaulted by triggering certain events specified in the contract as constituting default, including failing to provide additional deposits requested into the repairs escrow account, failing to maintain the properties, and failing to permit Fannie Mae to inspect the properties. Westland concedes that it did not make the requested deposits but argues that this was not a default because Fannie Mae was not permitted to unilaterally demand additional deposits. Westland argues that there was "no monetary default" because it was current on its monthly payments.

We interpret unambiguous contracts according to the plain language of their written terms. *Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 776, 121 P.3d 599, 603 (2005). Contracts must be read as a whole without negating any term. *Rd. & Highway Builders, LLC v. N. Nev. Rebar, Inc.*, 128 Nev. 384, 390, 284 P.3d 377, 380 (2012). And courts will look to an agreement's terms to determine what events constitute a default. *See Squyres v. Zions First Nat'l Bank*, 95 Nev. 375, 377, 594 P.2d 1150, 1152 (1979); *see also* 68A Am. Jur. 2d *Secured Transactions* § 426 (2014) ("[T]he security agreement itself must define the standards for determining whether a default occurs, and any breach by the debtor of the terms of the security agreement constitutes a default, entitling the secured party to any available remedies therefor . . . ." (footnotes omitted)). We review contracts de novo, *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005), but we defer to the district court's factual findings and will not set them aside unless they are clearly erroneous or not supported by substantial evidence, *Sowers v. Forest Hills Subdivision*, 129 Nev. 99, 105, 294 P.3d 427, 432 (2013).

During its hearing on the competing claims for relief, the district court focused on whether Westland was making monthly payments to the escrow accounts to any extent, finding a factual dispute as to default for this reason. The court found that Westland submitted documentation showing no deterioration and that Fannie Mae was required to show deterioration before Westland could default. It thus found "substantial factual disputes" regarding default.

The district court clearly erred in finding that Westland did not default because it disregarded the provisions of the loan agreement. Section 6.03(c) of the loan agreement permits Fannie Mae to order a PCA after

SUPREME COURT
OF
NEVADA

(O) 1947A

inspecting the properties and to require additional lender repairs or replacements on this basis. If Fannie Mae concludes that existing amounts on deposit in the corresponding reserve or escrow accounts are inadequate, it may require additional deposits under section 13.02(a)(4). The loan agreement leaves these determinations to Fannie Mae's discretion, and section 13.02(a)(9) further provides that nothing in the agreement limits Fannie Mae's right to require additional deposits. Westland may dispute a required repair or deposit, but section 12.03(e) requires that Westland use the appropriate legal process and permits Fannie Mae to demand that Westland deposit the contested amount. If Westland fails to pay any required amount, that is a default under section 14.01(a)(1). Fannie Mae would then have the rights to accelerate the loan and foreclose under section 14.02(a).

Here, Fannie Mae inspected the property in connection with a decline in occupancy and obtained a PCA. The PCA concluded that extensive repairs were required, and Fannie Mae accordingly demanded that Westland deposit an amount to pay for the expected costs of the repairs. Westland did not deposit this amount or challenge the demand through the procedures set forth in the agreement—facts that it concedes—and thus defaulted. The loan agreement does not contain any term supporting Westland's contention that it could only default by failing to make its monthly payments. Westland's counterclaims do not constitute a proper way to dispute Fannie Mae's demand. And evidence showing that Westland conducted certain repairs does not cure the default under the terms of the loan agreement. The district court clearly erred in ruling otherwise and in looking solely to Westland's monthly payments without considering Fannie Mae's entitlement to demand additional deposits.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

*The district court abused its discretion in failing to appoint a receiver*

Fannie Mae thus argues that the district court abused its discretion in denying its application for a receiver because it disregarded Westland's obligations under the loan agreement in finding that Westland did not default. Relying on NRS 32.260, Fannie Mae subsequently argues that a receiver was warranted because Westland agreed in the deed of trust to the appointment of a receiver on default and the properties were subject to waste and dissipation.[3] And relying on NRS 107A.260, Fannie Mae argues that it was entitled to a receiver because the properties were subject to the assignment of rents and the same agreement in the deed of trust to a receiver. Westland argues that no receiver was warranted because the district court found that the properties had not deteriorated. We agree with Fannie Mae.

This appeal presents the first opportunity this court has had to interpret NRS 32.260 and NRS 107A.260. Statutory interpretation is a question of law that we review de novo. *Leven v. Frey*, 123 Nev. 399, 402, 168 P.3d 712, 714 (2007). "Generally, when a statute's language is plain and its meaning clear, the courts will apply that plain language." *Id.* at 403, 168 P.3d at 715.

Nevada enacted NRS 32.260 in adopting the Uniform Commercial Real Estate Receivership Act and NRS 107A.260 in adopting the Uniform Assignment of Rents Act. NRS 32.100; NRS 107A.010. NRS 32.260 provides for both the mandatory and the discretionary appointment

---

[3]Fannie Mae also asserts without argument that NRS 107.100 supports its entitlement to a receiver. We need not consider this assertion. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

of a receiver. NRS 32.260(1) states conditions when a receiver "may" be appointed. This includes when a party with an apparent interest in the property shows that the property is subject to or at risk "of waste, loss, dissipation[,] or impairment." NRS 32.260(1)(a)(1). In stating that the district court "may" appoint a receiver, the statute provides the court discretion whether to appoint a receiver in situations under NRS 32.260(1). *See Sengbusch v. Fuller*, 103 Nev. 580, 582, 747 P.2d 240, 241 (1987) ("'May' is to be construed as permissive, unless the clear intent of the legislature is to the contrary."); *see also* Unif. Commercial Real Estate Receivership Act § 6 cmt. 1 (2015) (explaining that the draft language enacted in NRS 32.260(1) reflected the historical approach permitting a court to exercise its discretion in settling whether a receiver was needed to preserve or administer a property); *cf. SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 744, 334 P.3d 408, 410 (2014) (looking to uniform law and its commentary when interpreting a Nevada statute based on that uniform law), *holding modified on other grounds by Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg.*, 133 Nev. 28, 32, 388 P.3d 970, 974 (2017).

NRS 32.260(2), meanwhile, provides that "a mortgagee is entitled to appointment of a receiver" in connection with enforcing the mortgage in certain instances, including when "[t]he mortgagor agreed in a signed record to appointment of a receiver on default." NRS 32.260(2)(b). In providing that "a mortgagee is entitled to appointment of a receiver," the Legislature conferred a right to such mortgagees to demand that a court appoint a receiver, instead of conferring a discretionary right on district courts. *See* Unif. Commercial Real Estate Receivership Act § 6(b) (stating alternative operative language for this provision for legislatures to enact,

either "[a mortgagee is entitled to appointment of]" or "[the court may appoint] a receiver" (alterations in original)); *id.* cmt. 2 (discussing trend towards holding appointment of a receiver to be mandatory where the loan agreement contains a clause by which the mortgagor consented to appointing a receiver); *see also* NRS 0.025(1)(a) (stating that, generally, "'is entitled' confers a private right"). NRS 107A.260(1)(a)(1) likewise provides that the assignee of rents "is entitled to the appointment of a receiver for the real property subject to the assignment of rents" when the assignor has defaulted and agreed in a signed writing to appointing a receiver in the case of default.[4] Thus, when the requirements are met under these statutes, the mortgagee/assignee is entitled to the appointment of a receiver as a matter of right.

We conclude the district court abused its discretion in denying Fannie Mae's request for the appointment of a receiver. First, its decision rested on the clearly erroneous finding that Westland had not defaulted. As a result, the court did not appreciate that Fannie Mae was entitled to the appointment of a receiver, as Westland expressly agreed to the appointment of a receiver in the event of default and had defaulted and Fannie Mae sought a receiver in connection with enforcing the loan agreement and for a property subject to the assignment of rents.[5] *See* NRS 32.260(2)(b); NRS

---

[4]We observe no meaningful distinction between the entitlements in NRS 32.260(2) and NRS 107A.260(1) and clarify that being entitled to the appointment of a receiver has the same meaning in each statute. *Cf.* Unif. Commercial Real Estate Receivership Act § 6 cmt. 2 (observing that the entitlement to a receiver in the uniform act enacted in NRS 32.260(2) tracks the comparable provision in that enacted in NRS 107A.260(1)).

[5]Westland raises several additional unpersuasive arguments against this conclusion. Its contention that Fannie Mae was only entitled to

107A.260(1)(a)(1). Accordingly, we reverse the district court's order declining to appoint a receiver.

---

demand additional deposits when the loan was issued or transferred fails because Westland addresses a provision permitting adjustments in those instances, section 13.02(a)(3), but disregards section 13.02(a)(4), which permits the lender to demand additional deposits if the lender determines the balances to be insufficient. Next, Westland argues that section 13.02(a)(4) only permits increases for repairs of the types listed in the initial repair and replacement schedules and that those stated in the PCA exceed that limit. While this observation is accurate, the agreements set forth procedures by which Westland could challenge the propriety of Fannie Mae's demand, which Westland did not do. Further, it does not appear that any such challenge would have merit because the initial schedules and PCA cover similar types of repairs. We note that Westland did not make a specific argument regarding how the types of repairs and replacements in the initial schedules and the PCA were fundamentally dissimilar. Westland next argues that Fannie Mae was only permitted to obtain a PCA in response to deterioration occurring after the effective date of the loans, where Westland asserts that the damage or degradation observed predated the loans. Westland, however, assumed the representations in the loan agreement that the properties at the time the loans were entered were in good condition, were undamaged, and that any prior damage had been repaired (§ 9.01(b)(1)-(2)). Further, whether Fannie Mae concluded, in connection with an inspection, that the properties had deteriorated and warranted a PCA lies within Fannie Mae's discretion under section 6.03(c). Next, Westland argues that Fannie Mae was required to give it an opportunity to complete the identified repairs before demanding a deposit under sections 6.02(b)(3)(B) & (C). Westland is mistaken: those provisions require that it promptly commence work on any repairs Fannie Mae identified. Further, this claim misapprehends the nature of repairs under the agreement. As to repairs, the agreement provides that Westland must maintain adequate deposits in the escrow and reserve accounts, complete identified repairs and replacements, provide evidence of satisfactory completion, and then seek reimbursement by asking the servicer to disburse the appropriate amount from the appropriate account.

In sum, Westland has not shown that it was not in default or that the district court did not abuse its discretion.

*Preliminary injunction*

To begin, the preliminary injunction is reversed because Westland's default entails that it was not likely to succeed on the merits. *See Shores*, 134 Nev. at 505, 422 P.3d at 1241 (requiring a movant to "show a likelihood of success on the merits of their case and that they will suffer irreparable harm without preliminary relief" to obtain a preliminary injunction and reversing a district court's decision to issue a preliminary injunction where it relied on a clearly erroneous factual finding). We continue because the district court's order contains several deficiencies that warrant our attention.

An order granting an injunction must state why it issued, its specific terms, and the acts restrained or required in reasonable detail. NRCP 65(d)(1). When the district court here issued an injunction that ranged beyond the scope of the relief sought by Westland or briefed and argued by the parties, it violated this requirement by imposing vague and overbroad mandates. For instance, paragraph 4 enjoins Fannie Mae from "interfer[ing] with Westland's enjoyment of the Properties." The order found that Fannie Mae inspected the properties, sent notices regarding its deposit demand, and pursued foreclosures. The order does not contain findings showing a reason for this injunction to issue, as there was no suggestion that Fannie Mae had interfered with Westland's enjoyment, and it does not state what is restrained in reasonable detail. Many other of the numerous specific injunctions within the district court's order have similar deficiencies, lacking specific findings to show a reason that they should issue or reasonable precision as to what specifically is mandated. We caution district courts to exercise care in ensuring that injunctions provide

the requisite guidance to the enjoined party and do not exceed the scope of that required to serve the injunction's purpose.[6]

## CONCLUSION

We conclude that the district court erred in determining that Westland did not default and failing to apprehend Fannie Mae's entitlement to a receiver. The loan agreements define what constitutes a default, and under the agreements, Westland defaulted. The loan documents further provide that Westland agreed to the appointment of a receiver in the event of default. Fannie Mae relied on this agreement in seeking the appointment of a receiver after Westland defaulted. Under NRS 32.260(2)(b) and NRS 107A.260(1)(a)(1), Fannie Mae was entitled to the appointment of a receiver in this instance. Accordingly, the district court abused its discretion in

---

[6]Further, while "[i]t is common practice for Clark County district courts to direct the prevailing party to draft the court's order," *King v. St. Clair*, 134 Nev. 137, 142, 414 P.3d 314, 318 (2018), the court must "ensure that the proposed order drafted by the prevailing party accurately reflects the district court's findings," *Byford v. State*, 123 Nev. 67, 69, 156 P.3d 691, 692 (2007). We urge prevailing parties to take appropriate care to submit suitable draft orders that accurately reflect the findings, *Schoenberg v. Benner*, 59 Cal. Rptr. 359, 363 (Ct. App. 1967), and district courts to scrutinize those draft orders, being mindful that they assume responsibility for those findings and attendant rulings upon entry of the order, *Kamuchey v. Trzesniewski*, 98 N.W.2d 403, 406-07 (Wis. 1959). This obligation warrants particular care where the opposing party objects that the draft order strays from the record.

In light of our disposition, we need not reach Grandbridge's argument that it received inadequate notice of Westland's request for a preliminary injunction or Fannie Mae's argument that the injunction was void ab initio for violating the anti-injunction clause of the Housing and Economic Recovery Act, 12 U.S.C. § 4617(f) (2018).

entering a preliminary injunction and denying the request for a receiver. We reverse and remand for further proceedings.

                                                                       , J.
                                                                     Stiglich

We concur:

                    , C.J.
Parraguirre

                    , J.
Hardesty

                    , J.
Cadish

                    , J.
Silver

                    , J.
Pickering

                    , J.
Herndon